AETNA LIFE INSURANCE COMPANY *v.* FALLOW.

(*Jackson.* April Term, 1903.)

1. INSURANCE. Provision of release contained in policy of, material element of the contract.

It is well settled that a provision in a policy or contract of insurance for the release of an insurance company from liability for nonpayment of the premiums is a material element of the contract, and that on violation of such provision, unless there has been a waiver thereof, neither a court of law nor equity will enforce the contract. (*Post, p.* 729.)

Cases cited and approved: Dale v. Insurance Co., 95 Tenn., 38; Insurance Co. v. Statham, 93 Tenn., 24; Klein v. Insurance Co., 104 U. S., 88.

2. INSURANCE COMPANY. May be estopped to insist upon forfeiture, when.

But it is equally well settled that an insurance company can and ought to be estopped from insisting upon a forfeiture for nonpayment of the premiums when due, when, by any course of action, representation or dealings, the assured has been led to believe that by conformity thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part. (*Post, p.* 729.)

Case cited and approved: Insurance Co. v. Eggleston, 96 U. S., 572.

3. SAME. General agent of, may waive conditions in a policy, when.

It is well settled in this State that a general agent of an insurance company may waive conditions in the policy and that a company will be estopped to insist upon them in the enforce-

Life Ins. Co. v. Fallow.

ment of forfeiture, when such agent acts within the apparent scope of his employment as such agent of the company. (*Post, pp.* 730-732.)

Cases cited and approved: Murphy v. Continental Life Ins. Co., 3 Baxter, 440; Southern Life Insurance Co. v. Booker, 9 Heisk., 606.

4. **SAME. Agent of, having ostensible general authority, binds principal, when.**

An agent of an insurance company, having ostensible general authority to solicit applications and make contracts for insurance, and to receive first premiums, binds his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding the actual excess of authority. Such agent is presumed to have full power to waive immediate payment of premiums, to make contracts for credit, to accept annual premiums, and to issue renewal receipts, thereby extending or renewing policies of insurance. (*Post, pp.* 732-737.)

Cases cited: Murphy v. Conn. Life-Ins. Co., 3 Baxter, 440; Sheldon v. Life Ins. Co., 25 Conn., 207; 26 N. Y., 460; 43 Barb., 361-367; 2 Hun, 359; 4 Hun, 801; 5 Hun, 98; 32 N. Y., 622-624; 35 N. Y., 133; 51 N. Y., 122; 66 N. Y., 225; 68 N. Y., 439, 625, 626; 120 Mass., 330; 22 Conn., 575; 12 Wall., 285, 303; 67 Wis., 422; 20 Barb., 469; Farnum v. Insurance Co., 83 Cal., 246; Miss. Val. Co. v. Neyland, 9 Bush., 436; Ball & Sage Wagon Co. v. Insurance Co. (C. C.), 20 Fed., 232; Stewart v. Insurance Co., 155 N. Y. 257.

5. **SAME. Act of subagent employed to perform part of general agent's duty, binding on principal, when.**

It is well known that according to the ordinary course of business a general agent of an insurance company has the right to employ such clerks or subagents as may be necessary and

110 Tenn—46

proper in order to perform the business for which he has been appointed agent. And a subagent employed by a general agent and charged by him with the duty of performing some portion of the ordinary, usual and well-known duties pertaining to the position of general agent, has power to bind the principal when his act is in the course of that employment, and within the general scope of authority of such general agent. (*Post, pp.* 737-738.)

Cases cited and approved: Bodine v. Exchange, etc., Ins. Co., 51 N. Y., 117; Arff v. Star Fire Ins. Co. (N. Y.), 25 Northeastern, 1073; Steele v. Insurance Co. (Mich.), 53 N. W., 514; Goode v. Ins. Co. (Va.), 23 Southeastern, 744; Lingenfelter v. Ins. Co., 19 Mo. App., 252; Ins. Co. v. Bradford (Pa.), 50 Atl., 286.

Case cited, approved and distinguished: Insurance Co. v. Ewing, 2 Baxter, 305.

**6. SAME. Estopped to deny liability. Case in judgment.**
This case was instituted by defendant in error to recover of plaintiff in error, insurance company, the amount of a certain accident policy wherein it was provided that there should be no insurance thereunder, unless the premium was actually paid prior to any accident by reason of which claim was made; but for a long time prior to the accident, upon which the suit was predicated, a course of business had been adopted by the company's general agent and the insured, as to the payment of the premiums, by which insured was directed to retain premiums as they became due until they were called for by some person connected with the general agent's office, and in pursuance of such custom, the payment due prior to the accident causing the insured injury, was not paid when due, but was subsequently collected by one of the employees of said general agent and remitted to the company after insured had suffered the injury. It was insisted by the insurance company that under the provision contained in the policy to the effect that there should be no insurance thereunder unless the premium was actually paid

Life Ins. Co. v. Fallow.

prior to any accident by reason of which claim might be made, and the further provision that no agent of the company had authority to waive any condition of the policy and that no waiver would be recognized unless by the president or some other general officer of the company, was a material part of the contract, and not having been complied with rendered the policy nonenforceable. It was insisted upon by the insured that the company had estopped itself by the acts of its general agent and his course of dealing with the insured to insist upon forfeiture. The trial judge charged the jury according to the insistence of the insured and refused to charge as insisted upon by the company.

*Held*: There was no error in the charge of the trial judge, and that the insurance company was estopped to deny liability upon the policy sued on.

FROM SHELBY.

Appeal in error from Circuit Court of Shelby county. —J. S. GALLOWAY, Judge.

THOMAS M. SCRUGGS and M. G. EVANS, for Insurance Company.

MALONE & MALONE and W. B. GLISSON, for Fallow.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was brought in the court below to recover upon an accident policy. It resulted there in favor of

the plaintiff, and the defendant has appealed and assigned errors.

The facts necessary to be stated to raise the legal questions to be considered herein are as follows:

During the year 1895 the defendant in error obtained from the plaintiff in error an accident policy, which was continued in force by the payment of quarterly premiums, without question, down to December 18, 1901. At first, and during several quarters, the defendant in error went to the office of the plaintiff in error's general agent in the city of Memphis, Tenn., Harris, and paid the premiums promptly when due; but on several occasions, not finding the agent or any of his clerks in the office, he complained of this matter to Mr. Harris, calling attention to the inconvenience occasioned thereby. In response the agent instructed Mr. Fallow to retain the premiums until he himself or some of his clerks should call for them. Thereafter the custom of business prevailing between the parties was that the assured waited for the agent to collect the premium from him, and the agent, by himself or his clerks, did so for a series of years, continuing up to the time the present litigation began. Very often the agent or his clerk failed to collect the premium until it had been overdue eight or ten days. The assured relied implicitly upon this habit of business, and always reserved the premiums until called upon by the agent or some of his clerks. The last premium before the injury occurred fell due upon the 18th of December, 1901, but was not then paid, the

agent of the company not having called for it or sent for it.   The injury occurred on December 23, 1901.   On the 26th of the same month the company's agent sent Dr. Hall to inspect the injury and to examine the assured upon the subject.   The assured stated the facts fully to the doctor.   On the next day the agent directed the assured to send in his formal notice of loss, and to send in his "claim blank" when he should be fully recovered.

On the 2d day of January, 1902, some one of the agent's employees or clerks in the office whose business it was to collect premiums collected the premium from the assured and credited it to the company upon the agent's books, and deposited it in bank to the agent's credit, as agent, and it was forwarded by the agent to the company, along with other moneys belonging to it in his hands, and is still retained by it, and no offer has ever been made to return it to the assured.

This premium was not credited upon the books of the agent until January 6, 1902, and the agent had no personal knowledge of the fact that it had been collected until about the last of January or the first of February, 1902.   He could, however, by examining his books, have ascertained at any time, subsequent to December 18th, that the premium had not been paid on that day, and by a like examination he could have learned that it had been credited on the 6th of January.   It was not his custom, however, to attend to the details of the business. This was committed by him to the clerks in his office,

whom he appointed, and from whom he took bonds for the company.

He was at the head of the office, and was the general agent of the company for its accident department, covering two States—Tennessee and another. Among other things, it was his duty to receive applications for insurance, personally or through his clerks, to countersign policies in blank, and place them in the hands of his policy clerks for filling up and issuance, and to continue policies in force from quarter to quarter by accepting premiums therefor, personally or through his clerks.

Under the custom of business prevailing in the office of Mr. Harris, when premiums were paid after they were due policies were treated as renewed for three months from the date of the maturity of the premium. However, if the patrons of the company desired, after a premium day had passed, to take out a new policy rather than to renew the old one, they were allowed to do so, and in this case the new policy took effect from the date of its issuance.

The following conditions appear upon the back of the policy sued on, and are referred to in its face and made parts of it, viz.:

"(1) There shall be no insurance under this policy unless the premium is actually paid prior to any accident by reason of which claim is made." . . .

"(9) No agent has authority to waive any condition of this policy, and no waiver will be recognized, unless

in writing, signed by either the president, vice-president, secretary, or assistant secretary of the company."

In respect of the foregoing facts, his honor charged the jury as follows:

"If you find from the evidence in this case that the plaintiff was insured in the Aetna Life Insurance Company, and had an accident policy in the company that had been in operation for several years, and you further find that in his dealings with the defendant company it was the custom and usage, as between them, that the agent of the defendant's company would call at his place of business and collect the premiums, and that manner of payment and carrying on business had renewed the policy quarterly for several years; and you further find that the premium was not paid on the 18th day of December, a few days before the accident; and you further find that the plaintiff was injured on the 23d day of December, 1901, and suffered injuries whereby he would be entitled to the accident benefit according to his policy; and you further find that a day or so after the party was injured Dr. Hall, as the agent and representative of the Aetna Life Insurance Company, was sent to examine the condition of the plaintiff, and did so examine the condition of the plaintiff, and the plaintiff disclosed all the facts and circumstances to Dr. Hall; and you further find that Dr. Hall reported these facts to the home office here (Memphis); and you further find that the plaintiff paid—say on the 2d day of January or the 6th day of January after the accident—the home office here

or the agent of the company the premiums that would have been due on the 18th day of December, 1901, and that the agent accepted that money and passed it to the treasurer of the company, and issued a regular receipt for the money so paid,—then the court charges you that that would be a waiver of the demand of the premium in advance, and would be an acceptance of the money, and would continue the policy of insurance from the 18th day of December, 1901."

The defendant below asked the court to give in charge to the jury the following instruction, which was refused, viz.:

"The plaintiff cannot recover in this case unless he shows that he actually paid the premium due on the 18th day of December, 1901, prior to the accident in which he was injured, and no agent of the company by the terms of the policy has any authority to waive this condition of the policy requiring actual payment prior to the injury." In other requests his honor was asked, in substance, to charge that the company would not be bound by any collection made by the clerks in the office of the general agent, which request he likewise refused.

Error is assigned upon the action of his honor in charging the jury as he did charge them, and in refusing to give the instructions asked by the plaintiff in error.

The contention of the plaintiff in error, stated in the briefest way, is that it was not liable, for the reason that the premium had not been paid when the accident occurred, and that this fact was in no way qualified by any

of the special facts which we have recited as bearing upon the question.

It is, of course, true that a provision for the release of an insurance company from liability for nonpayment of premiums is a material element of the contract, and that on violation of such a provision, unless there has been a waiver thereof, neither a court of law nor of equity will enforce the contract. *Dale* v. *Continental Ins. Co.,* 95 Tenn., 38, 31 S. W., 266; *Insurance Co.* v. *Statham,* 93 U. S., 24, 23 L. Ed., 789; *Klein* v. *Insurance Co.,* 104 U. S. 88, 26 L. Ed., 662.

But the law is equally well settled that insurers are estopped to insist upon forfeiture for nonpayment of premiums when due, when, by any course of action, representation, or dealings, the assured has been led to believe that the forfeiture will not be insisted upon; or, as said in *New York Life Ins. Co.* v. *Eggleston*: "Any agreement, declaration, or course of action on the part of an insurance company, which leads a party honestly to believe that by conformity thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture." *Insurance Co.* v. *Eggleston,* 96 U. S., 572, 24 L. Ed., 841. See, also, *Phoenix Insurance Co.* v. *Doster,* 106 U. S., 30, 1 Sup. Ct., 18, 27 L. Ed., 65; *Hartford L. & A. Ins. Co.* v. *Unsell,* 144 U. S., 439, 12 Sup. Ct., 671, 36 L. Ed.,

496; *Ins. Co.* v. *Hyde,* 101 Tenn., 396, 403, 48 S. W., 968.

It is held, however, in the following cases that, where the policy on its face denies the right of the company's agent to waive forfeitures, there can be no waiver by any act of the agent unless sanctioned by the company itself, directly, or "by its course or action" ratifying its agent's representations, declarations, or acts, of the same or similar character, or by receiving and retaining the premiums paid without knowledge of the agent's mode of dealing. *Insurance Co.* v. *Eggleston,* supra; *Ins. Co.* v. *Norton,* 96 U. S., 234, 24 L. Ed., 689; *Ins. Co.* v. *Wolff,* 95 U. S., 330, 331, 24 L. Ed., 387. The rule is stated substantially in the same way in many other cases.

But in this State the rule has been given a larger scope, and it has been held that a general agent may waive conditions in the policy, and that the company will be thereby estopped to insist upon them in the enfocement of a forfeiture, when such agent acts within the apparent scope of his employment as agent of the company. *Murphy* v. *Continental Life Ins. Co.,* 3 Baxt., 440, 27 Am. St., 761; *Southern Life Ins. Co.* v. *Booker,* 9 Heisk., 606, 24 Am. Rep., 344. In the first cited of these cases it was held that a local agent of the company was such general agent within the territory over which his operations extended, where he had power to receive applications for insurance, to take preparatory steps for forwarding the applications to the principal office, to countersign policies, to receive advance premiums,

to receive premiums from persons having policies for the purpose of continuing or keeping alive those policies from year to year, and all the powers necessary and convenient for the execution of his authority, which latter powers would be conclusively presumed to exist.   To receive premiums even after the expiration of the year, and when the policies had, by their terms, determined and ceased, was held to be within the apparent scope of the employment of such agent, when it appeared that he was intrusted with the collection of current premiums and the delivery of receipts therefor, placed in his hands by the company, and therefore that the company was bound by his acceptance of a partial payment, and giving credit for the residue, after the time when the premium was payable.   In *Southern Life Ins. Co.* v. *Booker,* the clause of the contract in question appeared in the application, and was as follows:  "The policy hereby applied for shall not be binding upon the company until the amount of the premium as stated therein shall have been received by said company, or some authorized agent thereof, during the lifetime of the person therein assured."   The agent who issued the policy had entire or general charge of the business of the company for the State of Louisiana, acting under general instructions to such agents, and  without special instructions limiting his authority.   He was held to be a general agent, having power to waive the provision above copied, and that he did waive it by taking a promissory note from the assured, and that the company was bound on

the policy, although the assured died before the note was paid.

The authorities are very numerous to the effect that a general agent of an insurance company may waive the condition that no insurance shall be considered as binding until the actual payment of the premium.   See the following cases:   *Sheldon* v. *Life Ins. Co.,* 25 Conn., 207, 65 Am. Dec., 565; *Sheldon* v. *Atlantic F. & M. Ins. Co.,* 26 N. Y., 460, 84 Am. Dec., 213.   See, also, *Post* v. *Aetna Ins. Co.,* 43 Barb., 361, 367; *Dean* v. *Aetna Life Ins. Co.,* 2 Hun, 359; *Shear* v. *Phoenix M. L. Ins. Co.,* 4 Hun, 801; *Hotchkiss* v. *Germania F. Ins. Co.,* 5 Hun, 98; *Wood* v. *Poughkeepsie M. Ins. Co.,* 32 N. Y., 622, 624; *Boehen* v. *Williamsburgh City Ins. Co.,* 35 N. Y., 133, 90 Am. Dec., 787; *Bodine* v. *Exch. F. Ins. Co.,* 51 N. Y., 122, 10 Am. Rep., 566; *Church* v. *La Fayette F. Ins. Co.,* 66 N. Y., 225; *Van Schoick* v. *Niagara F. Ins. Co.,* 68 N. Y., 439; *White* v. *Conn. F. Ins. Co.,* 120 Mass., 330, 333; *Peck* v. *New London Mut. Ins. Co.,* 22 Conn., 575; *Miller* v. *Life Ins. Co.,* 12 Wall., 285, 303, 20 L. Ed., 398; *Alexander* v. *Continental Ins. Co.,* 67 Wis., 422, 30 N. W., 727, 58 Am. Rep., 869; *New York Cent. Ins. Co.* v. *Nat. Pro. Ins. Co.,* 20 Barb., 469.

The authorities are numerous in support of the general proposition that an agent of an insurance company, having ostensible general authority to solicit applications and make contracts for insurance, and to receive first premiums, binds his principal by any acts or contracts within the general scope of his apparent authority

notwithstanding an actual excess of authority. *Farnum* v. *Ins. Co.,* 83 Cal., 246, 23 Pac., 869, 17 Am. St. Rep., 233; *Miss. Val. Ins. Co.* v. *Neyland,* 9 Bush, 436; and the following cases cited supra: *Sheldon* v. *L. Ins. Co.; Sheldon* v. *Atlantic F. & M. Ins. Co.; Hotchkiss* v. *Germania F. Ins. Co.; Wood* v. *Poughkeepsie M. Ins. Co.; Church* v. *La Fayette F. Ins. Co.; Van Schoick* v. *Niagara F. Ins. Co.; White* v. *Conn. F. Ins. Co.; New York Central Ins. Co.* v. *Nat. Pro. Ins. Co.; Peck* v. *New London Mut. Ins. Co.;* and *Miller* v. *Life Ins. Co.*

He is presumed to have the power of the company to waive immediate payment, and make contracts for credit, and such contracts are binding on the company. *Ball & Sage Wagon Co.* v. *Aurora F. & M. Ins. Co.* (C. C.), 20 Fed. 232; *Post* v. *Aetna Life Ins. Co.,* 43 Barb., 351; *Stewart* v. *Union Mutual L. Ins. Co.,* 155 N. Y., 257, 49 N. E., 876, 42 L. R. A., 147.

The rule must be the same where such agent has the power, as in the present case, to accept annual premiums and to issue renewal receipts, thereby extending nor renewing policies of insurance, because the underlying reason is the same. *Murphy* v. *Continental Life Ins. Co.,* supra. And see *Alexander* v. *Continental Life Ins. Co.,* supra; *Appleton* v. *Phenix Life Ins. Co.,* 59 N. H., 541, 47 Am. Rep., 220; *Am. L. Ins. Co.* v. *Green,* 57 Ga., 469; *Marcus* v. *St. Louis Mut. Life Ins. Co.,* 68 N. Y., 625, 626; *Insurance Co.* v. *Wolff,* 95 U. S., 330, 331, 24 L. Ed., 387. And see the following cases cited supra: *Dean* v. *Aetna Life Ins. Co.; Shear* v. *Phoenix Mut. L.*

*Ins. Co.; Boehen* v. *Williamsburg City Ins. Co.; Bodine* v. *Exch. F. Ins. Co.; Ins. Co.* v. *Hogue,* 41 Kan., 524, 527, 21 Pac., 641, wherein a question arose upon a claim put forward that the policy had been renewed by credit given for the premium by the agent of the company. See, also, the following cases: *Goodwin* v. *Mass. Mut. L. Ins. Co.,* 73 N. Y., 480, 495; *Dean* v. *Aetna Life Ins. Co.,* supra; *Post* v. *Aetna Ins. Co.,* supra; *Rivara* v. *Queen's Ins. Co.,* 62 Miss., 728, 729; *Am. Cent. Ins. Co.* v. *McLanathan,* 11 Kan., 533, 549; *Continental Ins. Co.* v. *Kasey,* 25 Grat., 274, 18 Am. Dec., 681; *Van Schoick* v. *Niagara F. Ins. Co.,* supra; *Nat. Mut. F. Ins. Co.* v. *Barnes,* 41 Kan., 161, 163, et seq., 21 Pac., 165; *Ins. Co.* v. *Wilkinson,* 13 Wall., 234, 235, 20 L. Ed., 617—which fully sustain the rule laid down in our cases concerning the powers of the general agent of an insurance company. See, also, the case of *Farnum* v. *Ins. Co.,* supra, where the subject is extensively discussed.

It has also been held that, even though an agent of the company had no authority to bind it by receiving payment of a premium after it was due, yet the company might receive payment at any time, and, if they received the amount of the premium from the agent after it was due, they were bound to inform themselves of the time when it had been paid to him, and by receiving it from him without inquiry they waived the right to insist on the delay in the payment as a ground of forfeiture of the policy. *Hodson* v. *Guardian L. Ins. Co.,* 97 Mass., 144, 93 Am. Dec., 73.

An in- *Insurance Co.* v. *Wolff* it was said: "Where an agent ,is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived."

As to the point raised under the ninth condition of the policy, that no agent had authority to waive any condition, and that no waiver could be recognized, unless in writing signed by either the president, vice-president, secretary or assistant secretary of the company, this has been heretofore so fully considered in the decisions of this court affirming the right of the agent to waive that we hardly deem it necessary to more than refer to them. *Am. Cent. Ins. Co.* v. *McCrea, Maury & Co.,* 8 Lea, 513, 520, 521, 524-526; *Dale* v. *Continental Ins. Co.,* 95 Tenn., 38, 48-50, 31 S. W., 266.

As said in these cases: "A written contract may be changed by parol, and this although it stipulates that it shall be changed only in writing, for the obvious reason that men cannot tie their hands or bind their wills so as to disable them from making any contracts allowed by law, and in any mode in which it may be entered into"— citing *Pechner* v. *Phoenix Co.,* 65 N. Y., 195. Again: "A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to

agree in writing. Every such agreement is ended by the new one which contradicts it"—citing *Westchester Fire Ins. Co.* v. *Earle,* 33 Mich., 153; *Ins. Co.* v. *Norton,* 96 U. S., 234, 24 L. Ed., 689. Again: "A parol permission may equally be given (although the terms of the policy require the permission to be indorsed on the policy), or a forfeiture may be waived by parol"—citing *Planters' Ins. Co.* v. *Myers,* 55 Miss., 479, 30 Am. Rep., 521. See, also, *Electric L. Ins. Co.* v. *Fahrenkrug,* 68 Ill., 468, and *German Ins. Co.* v. *Gray* (Kan.), 23 Pac., 637, 8 L. R. A., 70, 19 Am. St. Rep., 150.

In the latter case it is said: "In the present case, as in some of the cases cited, it was stipulated in the policy that no agent of the company, or any other person than the president and secretary, should have authority to alter or waive any of the terms or conditions of the policy, or make any indorsements thereon, and all agreements of the president or secretary must be signed by either of them. This provision, however, may be modified by the company to the same extent as any other, and whatever the company can do may be done by its general agents." 8 L. R. A., 77. "Especially is this true in respect of a foreign insurance company, whose officers are especially inaccessible to the assured." *Renier* v. *Dwelling House Ins. Co.,* 74 Wis., 89, 42 N. W., 208; and see *Gans* v. *St. Paul F. & M. Ins. Co.,* 43 Wis., 108, 28 Am. Rep., 535; *Am. L. Ins. Co.* v. *Gallatin,* 48 Wis., 36, 3 N. W., 772; *Schafer* v. *Phoenix Ins. Co.,* 53 Wis., 361, 10 N. W., 381; *Lamberton* v. *Con. F. Ins. Co.,* (Minn.),

Life Ins. Co. v. Fallow.

39 N. W., 76, 1 L. R. A., 222; *Willcuts* v. *Northwestern Mut. Ins. Co.,* 81 Ind., 307, 310; *Richmond v. Niagara F. Ins. Co.,* 79 N. Y., 230, 239; *Am. L. Ins. Co.* v. *Green,* 57 Ga., 469; *Phoenix Ins. Co.* v. *Hart,* 149 Ill., 514, 520, et seq., 36 N. E., 990; *Germania L. Ins. Co.* v. *Koehler,* 168 Ill., 293, 48 N. E., 297, 61 Am. St. Rep., 108.

As to the point that a subagent or clerk in the office had no authority to bind the company by collection of the premium after due, there is nothing in this. "It has been held that an ordinary agent of an insurance company has the power to employ clerks to discharge the ordinary business of his agency, and that a waiver of a character which the agent himself could make is to be attributed to him when made by his clerk. In *Bodine* v. *Exchange F. Ins. Co.,* 51 N. Y., 117, it was said by Earl, C., at page 123: 'We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them, and that they could not transact their business if obliged to attend to all the details in person; and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums, and to take payment of premiums in cash or securities, and to give credit for premiums or to demand cash; and the act of the clerk in all such cases is the act of the agent, and binds the company just as effectually as if it were done by the agent in person. The maxim of

"*Delegatus non potest delegare*" does not apply in such a case. Story, Ag., section 14.' Enough has been said to show that an agent of an insurance company has the right to, and indeed it is the expectation of the company that he will, employ such clerks and other assistants as may be necessary and proper in order that he may do the business for which he has been appointed agent. Upon the question of the character of the service, we think it is sufficient that the person is engaged by the agent to do for him some portion of the ordinary, usual, and well-known duties pertaining to the position of the agent, and what he does in the course of that employment and within its general scope is done by the agent." *Arff* v. *Star Fire Ins. Co.* (N. Y.), 25 N. E., 1073, 10 L. R. A., 609, 21 Am. St. Rep., 721; *Steele* v. *German Ins. Co.,* (Mich.), 53 N. W., 514, 18 L. R. A., 85; *Goode* v. *Georgia Home Ins. Co.* (Va.), 23 S. E., 744, 30 L. R. A., 842, 53 Am. St. Rep., 817; *Lingenfelter* v. *Phoenix Ins. Co.,* 19 Mo. App., 252; *Ins. Co.* v. *Bradford* (Pa.), 50 Atl., 286, 55 L. R. A., 408, 88 Am. St. Rep., 770. We think the foregoing excerpt from *Arff* v. *Ins. Co.,* states the law correctly, and we adopt it as a sound statement of the rule. There is no conflict between this holding and the case of *Ins. Co.* v. *Ewing,* 2 Baxt., 305. The facts stated in that case take it out of the operation of the rule, because it was there expressly proven that, under the practice and dealings current in the office, the sub-agent in question had no authority to collect premiums.

It is next insisted that in no event could the company

be bound by the agent's collection of the premium after loss, because it was not shown that any such collection had ever before been made. But, under the facts stated, we do not think this is a material consideration. The agreement and the course of business under which the assured and the company, through its general agent, were acting, were made and entered upon before the assured fell in arrears. He was authorized to rely upon them, and did rely upon them. But for this agreement, and settled course of business thereunder, he would no doubt have paid his premium when due, and would not have fallen in arrears at all. To allow the company to repudiate the action of its agent in collecting the premium under these circumstances, and to escape the payment of the loss, would be to sanction a fraud. We think the facts stated make out an estoppel upon the company. *Dean* v. *Aetna L. Ins. Co.,* 62 N. Y., 642; *Tennant* v. *Travellers' Ins. Co.* (C. C.), 31 Fed., 322, 324, 325; *Sheldon* v. *Conn. Mut. L. Ins. Co.,* 25 Conn., 222, 65 Am. St. Rep., 565; *Alexander* v. *Continental Ins. Co. of N. Y.,* 67 Wis., 422, 30 N. W., 727, 58 Am. St. Rep., 869; *Phenix Ins. Co.* v. *Tomlinson* (Ind.), 25 N. E., 126, 9 L. R. A., 317, 21 Am. St. Rep., 203; *Newark Machine Co.* v. *Kenton Ins. Co.,* 50 Ohio, St., 549, 35 N. E., 1060, 22 L. R. A., 768; *Ins. Co.* v. *Norton,* 96 U. S., 241, 24 L. Ed., 689; *Ins. Co.* v. *Wolff,* 95 U. S., 331, 24 L. Ed., 387; Bliss on Ins., section 194.

There were other errors assigned, all of which have been considered and overruled.

No question was made upon the amount of the indemnity allowed, and, there being no error in the action of the court below, the judgment must be affirmed.